UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **CRAIG ALAN NEIL** | **CIVIL ACTION** |
| **VERSUS** | **NO. 09-4136** |
| **DAVID T. SCHLUETER, ET AL** | **SECTION "B"(4)** |

**REPORT AND RECOMMENDATION**

Before the Court is a **Motion to Dismiss (R. Doc. 38)** which was referred to a United States Magistrate Judge to conduct a hearing, including an Evidentiary Hearing, if necessary, and to submit proposed findings and recommendations for disposition pursuant to **28 U.S.C. § 636(b)(1)(B) and (C), 28 U.S.C. § 1915A**, and as applicable, **42 U.S.C. § 1997e(c)(1) and (2)**. On July 7, 2009, the undersigned Magistrate Judge conducted a hearing pursuant to *Spears v. McCotter*,[1] and its progeny, with the plaintiff, Craig Alan Neil.[2] Upon review of the entire record, the Court has determined that this matter can be disposed of without an evidentiary hearing.

**I.    Factual Background**

    **A.    The Complaint**

The plaintiff, Craig Alan Neil ("Neil"), is incarcerated in the Avoyelles Correctional Center in Cottonport, Louisiana. He filed this *pro se* complaint pursuant to 42 U.S.C. § 1983 against Officer David T. Schlueter, Officer Brad J. Boyd, the Kenner Police Department, the City of Kenner,

---

[1] 766 F.2d 179 (5th Cir. 1985). The purpose of the *Spears* Hearing is to ascertain the factual and legal basis for the claims. *Spears*, 766 F.2d at 180. The information elicited at the hearing is in the nature of an amended complaint or a more definite statement under Fed. R. Civ. P. 12(e). *Wilson v. Barrientos*, 926 F.2d 480, 481 (5th Cir. 1991).

[2] Rec. Doc. No. 8. The plaintiff was sworn prior to testifying. The hearing was digitally recorded.

the Supervisor on Duty, and the Chief of the Kenner Police.  Neil alleges that, on March 8, 2008, he was operating a motor vehicle on 27th Street, in Kenner, Louisiana approaching a curve to the left onto Lexington Street.  He claims that he passed a police car as he continued around the curve.  The police car turned and pursued him.  The officer in the car turned on the light and stopped him.

Neil further alleges that, when he stopped his car, he reached to the front of his seat to let the seat move backward, so that he could unlatch the seatbelt and exit the vehicle.  As he reached to unlock the driver's door, he was immediately pulled from the vehicle and placed face down on the street.  He claims that his left arm was held down and he had to break his fall with his right hand.  He claims that he was sprayed in the face and eyes with pepper spray and handcuffed behind his back.

Neil also claims that he was lifted off of the ground by the police officers and walked to the hood of the car.  He claims that they slammed him onto the hood, causing fractures to his right seventh, eighth, and ninth ribs.  His claims of pain were ignored.  He was placed in the police car and taken to the Kenner Police station.

Neil further alleges that he continued to complain about the pain and was ignored.  He was pushed into a garage shower device to wash the pepper spray from his face.  He was taken to an intake cell where he told an unidentified intake officer that he was in pain.  He claims that he was told that if he needed to go to the hospital, it would be worse on him because the officers did not get paid for overtime.  At this time, Neil claims he asked to speak to a lawyer.  He was given a prison uniform and taken to a cell.

He claims that Officer Schlueter eventually opened the cell and inquired as to how he was feeling.  Neil concedes that he did not answer him.  Later that day Neil was transported to the

Jefferson Parish Correctional Center where he posted bond. He claims that he was unable to return to work because of his broken ribs. Neil seeks compensatory and punitive damages in the amount of $1.5 million.

### B. The *Spears* Hearing

Neil testified that he was driving his car in Kenner, Louisiana trying to get to Transcontinental Drive. He stated that he was traveling 20 mph as he approached a curve to his left. A Kenner Police patrol car was pulled into a driveway on the left. The patrol car pulled up behind him, followed him, and then pulled him over.

Neil further testified that, when the officers approached his car, they were hollering at him to keep his hands visible. Another officer yelled for him to exit the vehicle. While he was exiting the vehicle, one of the officers pulled him out of the car. The officer held his left arm down to his side and pushed him down to the ground.

Neil also testified that he was sprayed with mace, moved to a patrol car, and slammed onto the hood. He stated that he began feeling pain in his ribs and had difficulty breathing. He also claimed that, during questioning, the officers became irate. He stated that because he refused to speak to them, they immediately placed him in a jumpsuit and threatened him with violence if he made a false move. Neil's testimony during the *Spears* Hearing is that the two arresting officers, as opposed to the intake officer, placed him in a cell. He contends that this cell had feces on the walls.

Neil testified that he told the Officers that he could not breathe but they provided no medical help. He stated that one of the officers came to see him, indicating that he knew that Neil was hurt.

Neil stated that the officer told him that he would be transferred to Jefferson Parish Correctional Center where he was eventually released on bond.

He also testified that he tried to go back to work but he was in pain. He went to the hospital a few days later and the X-rays showed fractures, but there was nothing they could do. He also testified that he was having emotional problems because he could no go back to work.

Neil also testified that he was charged with possession of paraphernalia, possession of cocaine, resisting arrest, and a traffic violation for failing to use a turn signal when making a left turn. Neil stated that he entered pleas of guilty to the charges after having trouble finding counsel to represent him. He testified that he received a five year sentence for each of the possession counts and six months for resisting arrest. Neil conceded that he had a prior criminal record and that he likely would be multi-billed if he did not take the deal offered to him.

He also stated that he filed suit against Officer Schlueter because he completed the report along with Officer Boyd. He alleges that Officer Boyd was the transporting Officer. Neil admitted that he did not know who slammed him onto the hood of the car. He further testified that Officer Boyd was the one that put him in the shower to wash off the pepper spray. He stated that he filed suit against the Police Chief because he failed to train his Officers properly.

**C.     Shultea Reply**

On January 8, 2010, the undersigned issued a Partial Report and Recommendation which recommended that the claims against the Kenner Police Department and the City of Kenner be dismissed with prejudice as frivolous and otherwise for failure to state a claim for which relief could be granted. (R. Doc. 11.) The Partial Report and Recommendation was adopted by the presiding Judge on February 3, 2010. (R. Doc. 13.)

Subsequently, on September 29, 2010, the Defendants filed a Motion for Rule 7(a)[3] Reply (R. Doc. 35) which sought a reply that was: (1) tailored to the Kenner Defendants' defense of qualified immunity, (2) described the specific conduct of the individuals who allegedly caused the Plaintiff injury, and (3) describe the facts of the particular actions to which he asserts a claim against Police Chief Steve Caraway. The motion was granted as unopposed by the presiding Judge on October 25, 2010. (R. Doc. 36.) On November 19, 2010, the Plaintiff filed his reply. (R. Doc. 37.)

Under a broad reading, the Plaintiff merely re-alleges his general allegations that the Defendants used excessive force against him by breaking the Plaintiff's ribs. He further refers the Court to both his Complaint and his *Spears* hearing.

### D.     Motion to Dismiss

As to the instant motion, the Defendants filed this **Motion to Dismiss (R. Doc. 38)** seeking an Order dismissing the Plaintiff's § 1983 claims. The Defendants contend that the Plaintiff's claims against Chief Caraway are frivolous. The Defendants further contend that the excessive force claims against Officers Schlueter and Boyd are barred under *Heck v. Humphrey*. The Defendants further claim that the Plaintiff has failed to adequately state a claim for conditions of confinement and denial of medical care.

## II.    Standard of Review

Pursuant to Fed. R. Civ. Pr. 12(b)(6), a complaint shall be dismissed if it appears that the plaintiff can prove no set of facts which would entitle him to relief. *See Home Builders Assoc. of Ms., Inc. v. City of Madison, Ms.*, 143 F.3d 1006, 1010 (5th Cir. 1998); *Home Capital Collateral, Inc. v. FDIC*, 96 F.3d 760, 764 (5th Cir. 1996). The Court must accept as true all well-pleaded

---

[3]A Rule 7(a) reply is commonly referred to as a Shultea reply.

factual allegations in the complaint and view them in the light most favorable to the plaintiff. *See Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996); *American Waste & Pollution Control Co. v. Browning-Ferris, Inc.*, 949 F.2d 1384, 1386 (5th Cir. 1991).

The district court may dismiss an action on its own motion under Rule 12(b)(6) "as long as the procedure employed is fair." *Bazrowx v. Scott*, 136 F.3d 1053, 1054 (5th Cir. 1998) (quotation and citation omitted). Thus, before a sua sponte dismissal, the court should provide the pro se plaintiff with notice and an opportunity to amend, unless the court finds that the plaintiff has alleged his best case. *Id*. (citing *Jacquez v. Procunier*, 801 F.2d 789, 792-93 (5th Cir. 1986), *Moawad v. Childs*, 673 F.2d 850, 851-52 (5th Cir. 1982)). However, the court need not seek further factual development and should dismiss with prejudice when the complaint alleges plaintiff's best case. *Jones v. Greninger*, 188 F.3d 322, 327 (5th Cir. 1999) (citing *Jacquez*, 801 F.2d at 792); *Bazrowx*, 136 F.3d at 1054. A review of the plaintiff's complaint and the supplement thereto, reflects that he has provided the factual details underlying his claims against the defendant.

### III. Analysis

#### A. Claims Against Police Chief Caraway

The Defendants contend that the Plaintiff's claims against Police Chief Caraway should be dismissed. Chief Caraway contends that a claim against him is essentially a claim against the City of Kenner, and therefore should be dismissed.

In order to succeed on a claim under § 1983, a plaintiff must prove both the constitutional violation and action that was taken by a "person" under color of state law. *Flagg Bros., Inc. v. Brooks*, 436 U.S. 149, 156 (1978); *Polk Cnty. v. Dodson*, 454 U.S. 312 (1981). A state actor sued in his or her official capacity is not considered a person for purposes of suit under § 1983. *Will v.*

*Michigan Dept. of State Police*, 491 U.S. 58 (1989).  Instead, the action would be considered one against the employer, in this case, the City of Kenner.  *See Monell v. Dep't of Social Servs.*, 436 U.S. 658, 690 n. 55 (1978).

As this Court previously outlined in its Partial Report and Recommendation, the City of Kenner is not a proper Defendant in this matter.  Local governing bodies are "persons" within the meaning of § 1983 and therefore, are subject to suit under that provision.  *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 694 (1978).  However, a governmental body may not be held vicariously liable for the actions of its employees; rather, it can be liable only "when execution of a government's policy or custom . . . inflicts the injury that the government as an entity is responsible." *Id.*

Actions of officers or employees of a municipality do not render the municipality liable under § 1983 unless they execute an official policy.  *Webster v. City of Houston*, 735 F.2d 838, 841 (5th Cir. 1984), *on reh'g*, 739 F.2d 993 (5th Cir. 1984); *see also Bd. of Cnty. Comm'rs of Bryan Cnty., Okl. v. Brown*, 520 U.S. 397, 403 (1997).  "A plaintiff may not infer a policy merely because harm resulted from some interaction with a governmental entity." *Colle v. Brazos Cnty., Tex.*, 981 F.2d 237, 245 (5th Cir. 1993).  Rather, he must identify the policy or custom which allegedly caused the deprivation of his constitutional rights. *See*, *e.g.*, *Murray v. Town of Mansura*, 76 F. App'x 547, 549 (5th Cir. 2003); *Treece v. Louisiana*, 74 F. App'x 315, 316 (5th Cir. 2003).  A plaintiff also must allege not merely that such an unconstitutional policy or custom exists, but that it was the proximate cause of their injury. *See Collins v. City of Harker Heights*, 503 U.S. 115, 122-24 (1992); *Berry v. McLemore*, 670 F.2d 30, 33-34 (5th Cir. 1982), *overruled on other grounds*, *Int'l Woodworkers of Am. v. Champion Int'l Corp.*, 790 F.2d 1174 (5th Cir. 1986).

In the instant case, Neil has failed to identify a City of Kenner policy or alleged that a City of Kenner parish policy caused the alleged violations he asserts in the manner contemplated by *Monell*. Therefore, the Plaintiff's claims against Chief Caraway, which is truly a claim against the City of Kenner, should be dismissed. Having determined that the Plaintiff cannot sue the City of Kenner, the Court need not address the Defendant's arguments that Chief Caraway is an improper Defendant under any theory of supervisory liability.

### B. Claims Against Officers Schlueter and Boyd

#### 1. Excessive Force

Officers Schlueter and Boyd seek dismissal of Neil's claims alleging excessive force because Neil pled guilty to possession of cocaine, resisting an officer, and possession of drug paraphernalia. Because Neil pled guilty to resisting an officer in violation of Louisiana Revised Statute 14:108[4], the officers contend that the excessive force claim is subject to dismissal pursuant to *Heck v. Humphrey* 512 U.S. 477 ( 1994). *See also Hainze v. Richards, 207 F. 3d 795* (5th Cir. 2000)(Where court held that *Heck* applies to excessive force claims).

In his Shultea reply, the Plaintiff contends that the Officers used excessive force against him, by breaking his ribs, "clearly after the incident and Plaintiff was restrained." (R. Doc. 37, p. 1.) In *Walker v. Munsell*, 281 Fed. Appx. 388 (5th Cir. 2008), the Court addressed the application of the *Heck* doctrine in a situation where the Plaintiff claimed that officers used excessive force against him when he did not resist arrest, did nothing wrong, and was attacked by the officers for no reason.

---

[4]A. Resisting an officer is the intentional interference with, opposition or resistance to, or obstruction of an individual acting in his official capacity and authorized by law to make a lawful arrest or seizure of property or to serve any lawful process or court order when the offender knows or has reason to know that the person arresting, seizing property, or serving process is acting in his official capacity.

The court found that the plaintiff's suit "squarely challenge[d] the factual determination that underlies his conviction for resisting and officer," and that if he prevailed "he [would] have established that his criminal conviction lack[ed] any basis." *Arnold v. Town of Slaughter*, 100 Fed. Appx. 321, 324-25 (5th Cir. 2004). The Fifth Circuit found that the plaintiff's excessive force claim in a situation where the plaintiff allegedly did not resist arrest and did nothing wrong was clearly the type of claim barred by *Heck* in the Fifth Circuit. *See also DeLeon v. City of Corpus Christi*, 488 F.3d 649, 656-57 (5th Cir. 2007)(holding that *Heck* barred Appellant's excessive force claim where his complaint maintained that he did not resist arrest and did nothing wrong and provided no alternative pleading or theory of recovery)."

Here, like in *Walker*, the Plaintiff claims that excessive force was used against him even though he had already been restrained and was not resisting arrest. Here, however, the Defendants have submitted the Plaintiff's plea of guilty for resisting arrest of an officer. (*See* R. Doc. 38-7, p. 1, Exh. H.) If the Court were to find that the Plaintiff's claims of excessive force had merit, it would imply that his criminal conviction for resisting the officers lacks any basis. This type of excessive force claim is therefore barred by *Heck* and should be dismissed.

### 2. **Conditions of Confinement.**

The Defendants further seek to dismiss Neil's claims for conditions of confinement relating to his allegations that he was placed in a cell containing feces. The claim should be dismissed for the following reasons.

Under the Eighth Amendment, the law is clear that an inmate has the constitutional right to be free from exposure to cruel and unusual conditions of confinement and also a right to adequate medical care. While the Eighth Amendment "does not mandate comfortable prisons", *Rhodes v.*

*Chapman*, 452 U.S. 337 (1981), the Constitution imposes upon prison officials at least minimal requirements in the treatment and facilities which they provide to prisoners. *Farmer v. Brennan,* 511 U.S. 825 (1994). Prison officials must ensure that inmates receive adequate food, clothing, shelter and medical care, and a constitutional violation occurs only when two requirements are met.

First, there is the objective requirement that the condition "must be so serious as to 'deprive prisoners of the minimal civilized measure of life's necessities,' as when it denies the prisoner some basic human need." *Harris v. Angelina Cnty., Texas,* 31 F.3d 331 (5th Cir. 1994), *citing Wilson v. Seiter,* 501 U.S. 294 (1991). Second, under a subjective standard, the Court must determine whether the prison officials responsible for the deprivation were "'deliberately indifferent' to inmate health or safety". *Farmer v. Brennan, supra.* Specifically, in order to find liability, the Court must find that prison officials were both aware of facts from which an inference could be drawn that a substantial risk of serious harm existed, and that they also in fact drew the inference. *Id.* Further, in appropriate circumstances, deliberate indifference may be inferred from the obviousness of the substantial risk. *Farmer v. Brennan, supra*.

As described in Section A, *supra*, Neil cannot maintain a claim against Chief Caraway. As to the other Officers, however, according to Neil's testimony during the *Spears* Hearing, both Officers Boyd and Schlueter were the individuals who placed him in the cell with feces. In some circumstances, being placed in a cell with feces is sufficient to constitute a constitutional violation. *See e.g., Gatson v. Coughlin*, 249 F.3d 156, 166 (2d Cir. 2001)(finding that triable issue of fact existed where prisoner alleged he was *inter alia*, exposed to human feces in his cell).

However, the Supreme Court has noted that a filthy cell may be tolerable and not rise to the level of a constitutional violation where the detainee is held for a few days, but is intolerable, and

10

thus unconstitutional, if the detainee is held for weeks or months. *Hutt v. Finney*, 437 U.S. 678, 687 (1978). Many courts, considering the Supreme Court's emphasis on the length of exposure contrasted with the extent of the unsanitary conditions, determine that no constitutional violation has occurred. *See Lyons*, 74 F.3d at 107 (Fifth Circuit determining that a deprivation of mail, legal materials, sheets, and showers for three days did not constitute a due process violation); *Owens v. Scott Cnty. Jail*, 328 F.3d 1026, 1027 (8th Cir. 2003)(remanding for the trial court to determine whether forcing a pre-trial detainee to sleep next to a toilet for five weeks was a constitutional violation); *Whitnack v. Douglas Cnty.*, 16 F.3d 954 (8th Cir. 1994)(ordering judgment for the defendant where plaintiff detainee complained about being held in a cell in which the toilet was "covered with dried feces on both the inside and outside, the sink was covered with hair and vomit, the floor was covered with garbage and rotting food, and the walls were covered with dried human mucus" for 24 hours because the detainee's ability to dispose of bodily waste was not interfered with); *Smith v. Copeland*, 87 F.3d 265 (8th Cir. 1996)(granting defendants judgment as a matter of law and finding no constitutional violation where detainee was held in solitary confinement without clothing or bedding, was denied food and water, and was exposed to raw sewage in his cell for four days because Smith was not exposed to disease, he did not suffer adverse effects from the exposure, and his exposure to the sewage was for a limited period of time).

A few have found constitutional violations. *See Howard v. Adkison*, 887 F.2d 134(8th Cir. 1989)(holding that a prisoner held for two years in a cell filled with filth and human waste without being offered any cleaning supplies had asserted a constitutional violation); *Hall v. Dalton*, 16 F.3d 954 (8th Cir. 1994)(finding a due process violation where detainee was jailed in an overcrowded cell for 40 days was required to sleep on the floor, and was not allowed sufficient exercise); *McBride*

*v. Deer*, 240 F.3d 1287 (10th Cir. 2001)(finding an Eighth Amendment violation where prisoner was forced to live in a feces-covered cell for three days); *LaReau v. MacDougall*, 473 F.2d 974 (2nd Cir. 1972)(prisoner's Eighth Amendment rights were violated where he was forced to "live, eat, and perhaps sleep in close confines with his own human waste for five days); *Oladipupo,* 104 F.Supp.2d at 639 (finding that forcing a detainee to sleep on the floor with a mattress or to sleep without a mattress, even for a short time, constitutes a due process violation).

According to the Complaint, on March 8, 2008, Neil was arrested and placed in the cell with feces at the Kenner Police Station. Several hours later, he was transported to the Jefferson Parish Jail. Immediately thereafter, he was released on bond and taken to the hospital where he discovered that his ribs had been broken. The Complaint itself contends that all of his allegations occurred on March 8, 2008. As a result, the Plaintiff was not confined in the cell with feces for a sufficient period to maintain a conditions of confinement claim. As such, Neil's conditions of confinement claim should be dismissed.

### 3.     **Inadequate Medical Care**

Neil also asserts a claim for inadequate medical care. He alleges that he told the Officers that he could not breathe and began feeling pain in his ribs after he was slammed on the police car, however, they did not provide him with any medical care. According to his Complaint, Officer Schlueter came to his cell to check on him, but Neil refused to speak to him. Neil testified that he went to the hospital after he was released on bond and had x-rays done which confirmed that he had broken ribs.

The standard of conduct imposed on defendants with respect to medical care of inmates was clearly established by the Supreme Court in *Estelle v. Gamble*, 429 U.S. 97 (1976). In *Estelle*, the

Court held that deliberate indifference to serious medical needs of prisoners constitutes the "unnecessary wanton infliction of pain," proscribed by the Eighth Amendment. *Id.* at 104. This is true where the indifference is manifested by prison doctors in their response to the prisoner's needs. It is also true where the indifference is manifested by prison officials in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed. *Id*.

In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference that can offend "evolving standards of decency" in violation of the Eighth Amendment. *Id*.; *Hare v. City of Corinth*, 74 F.3d 633, 636 (5th Cir. 1996). Further, disagreement with medical treatment does not state a claim for Eighth Amendment indifference to medical needs. *Norton v. Dimazana*, 122 F.3d 286, 292 (5th Cir. 1997). Therefore, inadequate medical treatment of inmates may, at a certain point, rise to the level of a constitutional violation, while malpractice or negligent care does not. *Williams v. Treen*, 671 F.2d 892, 901 (5th Cir. 1982) ("mere negligence in giving or *failing to supply* medical treatment would not support an action under Section 1983" (emphasis added)); *see also Jackson v. Cain*, 864 F.2d 1235, 1246 (5th Cir. 1989).

In this case, Neil has failed to allege facts sufficient to establish that the defendants knew he faced a substantial risk of serious harm and disregarded that risk by failing to take reasonable measures to abate it. According to the allegations, Officer Schlueter specifically came to Neil's cell to check on him. However, Neil refused to speak to the Officer and therefore he did not seek medical help at that time. Despite multiple opportunities, including the *Spears* Hearing and Shultea reply, Neil has failed to allege that he actually made a request for medical care that was denied. As such, the Court recommends that Neil's claim for denial of access to medical care be dismissed

### IV.     Recommendation

Accordingly,

**IT IS RECOMMENDED** that the **Motion to Dismiss (R. Doc. 38)** be **GRANTED**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation **within fourteen (14) days** after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996).[5]

New Orleans, Louisiana, this 30th day of June, 2011.

**KAREN WELLS ROBY**
**UNITED STATES MAGISTRATE JUDGE**

---

[5]*Douglass* referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.